UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS PEREZ, Secretary of Labor,
United States Department of Labor,

        Plaintiff,

v.                                  CASE NO.: 8:12-CV-514-T-MAP

RENAISSANCE ARTS AND EDUCATION, INC,
d/b/a Manatee School for the Arts, and
DR. CHARLES W. JONES,

        Defendants.

_____/

## ORDER

This is a whistle-blower action the Secretary filed under Section 11(c) of the

Occupational Safety and Health Act ("OSH Act" or the "Act") (*see* 29 U.S.C. §

660(c)(1)) against Manatee School for the Arts ("the School") and its principal, Dr. Jones,

on behalf of a former School employee.[1]  After a four day trial, a jury found for the

Secretary and determined that $55,000 in back pay were due to the fired employee.  The

jury also assessed punitive damages in the amount of $100,000 against Dr. Jones and

$20,000 against the School.  This Order memorializes my findings and conclusions in

accordance with Fed. R. Civ.P. 52(a)(1)'s demands.  In sum, I find ample evidence

---

[1] There is no private right of action under federal law for a private employer's
retaliatory discharge under OSHA.  *George v. Aztec Rental Ctr. Inc.*, 763 F.2d 184, 186 (5th
Cir. 1985).  Instead, the Act permits the Secretary to file a case in district court if, upon
investigation, the Secretary determines that 29 U.S.C. § 660(c) has been violated.  29 U.S.C.
§ 660(c)(2).

supports the jury's finding on the Defendants' liability and the back pay award.  As for the appropriateness of the jury's punitive damage determinations, that matter is better determined in any post-judgment motions the Defendants file.

   A.  *Findings of Fact*

David Shack worked for the School as a teacher's aide in its theater department from October 2007 through July 2009.  *See* Plf. Ex. 31-A; Joint Ex. 6.  Concerned about student and staff safety, Mr. Shack recommended during his employment that the School upgrade the electrical systems in its theaters.  *See* Joint Ex. 1.  The School declined to fund these upgrades because of their cost and because it did not think the systems were unsafe.

On June 20, 2009, Mr. Shack wrote a letter to his supervisors listing his concerns.[2] Joint Ex. 1.  The School again took no steps to implement the safety upgrades.  Consequently, on July 10,[3] Mr. Shack filed an online complaint with the Occupational Safety and Health Administration ("OSHA"), asking to remain anonymous.  Plf. Ex. 11.  That same date, he emailed the Manatee County School Board members individually, attaching his June 20 letter.  Plf. Ex. 14.

Some time between July 10 and July 16, the School Board contacted the Manatee School District Fire Safety Inspector, who dispatched Fire Marshal Ron Cales to the

---

   [2]  I find that the School had notice of the letter on June 22, 2009, the date Mr. Shack testified he gave it to Joy Maloney, the head of the School's theater department at the time.

   [3]  All events occurred in 2009 unless otherwise noted.

School to investigate Mr. Shack's complaints.  Mr. Cales inspected the School on July 16 and found no violations of applicable fire or safety codes.  Joint Ex. 8.

Meanwhile, on July 14, an OSHA representative called the School and informed it of the anonymous OSHA complaint.[4]  Joint Ex. 7.  At 4:54 p.m. that same day, Defendants posted a vacancy announcement on backstagejobs.com to advertise a full-time "technical theater position, lighting and sound specialist" for the 2009-10 school year.  Joint Ex. 13.

On July 29, Dr. Jones terminated Mr. Shack in a short letter: "I have restructured your job into a faculty position.  Unfortunately, as we have discussed, you do not have the academic credentials necessary for that appointment.  Additionally, there is not funding for further aid positions in the theater department."  Joint Ex. 6.  Mr. Shack is the only employee Dr. Jones terminated in July 2009.  *See* Joint Ex. 14; Plf. Ex. 22-24.  Dr. Jones terminated three other employees in early June 2009, at the end of the school year.  Plf. Ex. 22-24.  Notably, Dr. Jones did not restructure the remaining teacher's aide position at the School.  Mr. Shack, before he received the letter, believed he would return to the School as a teacher's aide for the next school year and had pre-paid his health insurance premiums for the summer months.

Dr. Jones responded to OSHA that "it is our opinion that no violations exist." Joint Ex. 8.  He attached Mr. Cales's letter concluding that concerns regarding the

---

[4]  OSHA followed up with a letter to the School the next day.  *Id*.

theaters' electrical systems were unfounded.[5]  *Id.*  Mr. Shack then wrote to OSHA

disputing Mr. Cales's findings.  Plf. Ex. 10.  OSHA investigated and, in September 2009,

cited the School for three of the violations that Mr. Shack had identified.  The School

entered into an informal settlement agreement with OSHA, agreeing to pay $2,625 and

correct the violations.  Plf. Ex. 13.

>    B.  *Conclusions of Law*

>        1.  liability

Section 11(c) provides: "No person shall discharge or in any manner discriminate

against any employee because such employee has filed any complaint or instituted . . . any

proceeding under or related to this chapter . . ."  29 U.S.C. § 660(c)(1).[6]  To prevail on a

whistle-blower protection claim under the Act, The Secretary must prove: (1) Mr. Shack

participated in a protected activity; (2) subsequent adverse action by Defendants; and (3)

a causal connection between the protected activity and the subsequent adverse action.

*Solis v. Consolidated Gun Ranges*, No. C10-338Z, 2011 WL 1215028, at *7 (W.D. Wash.

Mar. 30, 2011).

---

[5]  In fact, Dr. Jones testified that he did not believe the OSH Act applied to the School because it is a charter school.

[6]  The Act defines "person" to include "one or more individuals, partnerships, associations, corporations, business trusts, legal representatives, or any organized group of persons."  Both Defendants (the School and its principal, Dr. Jones) qualify as "persons" under the Act.  *See Donovan v. Diplomat Envelope Corp.*, 587 F. Supp. 1417, 1425 (E.D.N.Y. 1984) ("Since the statute contains separate definitions for 'person' and 'employer', . . . it is clear that the defendant in an action under [Section 11(c)] need not be an employer.").

A complaint is "protected" under Section 11(c) if it arises under or is related to a health or safety hazard.  29 C.F.R. § 1977.9.  A complaint made to an employer arises under Section 11(c) only if it is made in good faith.  *Id*. at § 1977.9(c).  On the other hand, complaints made to federal agencies with the authority to regulate workplace safety and complaints to state or local agencies do not require good faith on the part of the employee.  *See id.*  The Secretary can establish a causal connection between the protected activity and the subsequent adverse action if the protected activity was a substantial reason for the adverse employment action:  "The employee's engagement in protected activity need not be the sole consideration behind discharge or other adverse action.  If protected activity was a substantial reason for the action, or if the discharge or other adverse action would not have taken place 'but for' engagement in a protected activity, Section 11(c) has been violated."  29 C.F.R. § 1977.6(b).  Circumstantial evidence is sufficient to establish a causal connection between the protected activity and the adverse action.  *See Reich v. Hoy Shoe Co., Inc.*, 32 F.3d 361, 365 n.4 (8th Cir. 1994).

The jury, impaneled in an advisory capacity pursuant to Fed. R. Civ. P. 39(c)(1), found that Defendants violated Section 11(c) of the Act when they terminated Mr. Shack.[7]  I agree.  The Secretary satisfied all three elements of a Section 11(c) retaliation

---

[7]    There is no federal right to a jury trial in an OSH Act case where the plaintiff seeks the equitable remedy of back pay.  *See Martin v. Sharpline Converting, Inc.*, 790 F. Supp. 252, 253-54 (D. Kan. 1992).  With this in mind, I impaneled an advisory jury that found for the Secretary and against Defendants and awarded the Secretary, on Mr. Shack's behalf, $55,000 in back pay and $120,000 in total punitive damages.  *See* Fed. R. Civ. P. 39(c)(1) (the court may try any issue with an advisory jury).

claim by a preponderance of the evidence.  Mr. Shack engaged in his first protected activity on June 22, when he submitted his letter to the School in the good faith belief that the violations he was highlighting presented workplace safety concerns.  OSHA validated his concerns in September 2009 when it cited the School for violating OSHA regulations.  Mr. Shack also engaged in protected activity on July 10, when he filed an online complaint with OSHA and emailed the school board members.

Defendants committed an adverse action when they terminated Mr. Shack on July 29.  The jury did not credit Dr. Jones's testimony that he had decided before the end of the 2009 school year (and before Mr. Shack complained) to eliminate Mr. Shack's position in favor of a faculty position.  Ample evidence supports the jury's determination.  Dr. Jones's decision is not reflected in the minutes of the School's board meetings or the School's budget.  Mr. Shack was the only employee restructured out of a position.  What is more, before the 2009 summer break, Mr. Shack pre-paid his health insurance premiums to ensure coverage during the summer months, evidence of a continuing employer-employee relationship.[8]

The Secretary also satisfies the third element of causation.  Defendants posted the vacancy announcement on July 14, three weeks after they received Mr. Shack's June 20

---

[8] Although Defendants emphasized that they eliminated Mr. Shack's position rather than terminated him, this is a semantic distinction only.  The practical effect was that Mr. Shack found himself without a job.

letter and the same day they learned of the OSHA complaint.[9]  Defendants terminated Mr.

Shack two weeks later.  Under these circumstances, I find that Defendants were aware of

Mr. Shack's protected activities and would not have terminated Mr. Shack but for his

these activities.  *See* 29 U.S.C. § 660(c) ("[n]o person shall discharge...any employee

because such employee has filed any complaint..."); 29 C.F.R. § 1977.6(b) (if the

"adverse action would not have taken place 'but for' engagement in protected activity,

Section 11(c) has been violated"); *see also Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 133 S.

Ct. 2517 (2013) (finding that "but for" standard applies to Title VII retaliation claims);

*Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 175-76 (2009) (same for ADEA cases).

However, "[a]n employee's participation in activities protected by [OSHA] does

not automatically render him immune from discharge or discipline for legitimate reasons,

or from adverse action dictated by non-prohibited considerations."  29 C.F.R. §

1977.6(a).  Instead, where the plaintiff has made a prima facie showing of retaliation

under Section 11(c), the burden shifts to the employer to articulate a non-discriminatory

reason for its action.  *Hoy Shoe Co.*, 32 F.3d at 365.  The defendant's nondiscriminatory

reason is not sufficient to avoid liability if the plaintiff shows that the proffered reason is

pretextual.  *Id*.

Dr. Jones testified that Defendants would have terminated Mr. Shack's

employment even if he had not submitted his letter to the School or filed his OSHA

---

[9] Despite that Mr. Shack asked OSHA to consider his complaint anonymous, I find that Defendants knew Mr. Shack was the complainant.

complaint.  The Secretary met its burden of showing that this proffered reason for Mr.

Shack's termination is pretextual.  Mr. Shack was the only employee Dr. Jones fired at

the end of July 2009; the others he fired earlier, at the end of the school year – a more

typical time to terminate a teacher or aide.  Defendants advertised for the new faculty

position the same day Mr. Shack filed his OSHA complaint and emailed the school board.

Moreover, the short period of time between Mr. Shack's protected activities (his letter to

the school on June 22, his complaint to OSHA on July 10, and his letter to the school

board that same day) and Defendants' adverse action (Mr. Shack's termination on July

29) persuade me that Mr. Shack's complaints were the but for cause of his termination.[10]

The jury necessarily determined that the Defendants would not have restructured Mr.

Shack's position if he had not made his workplace safety complaints, a conclusion I find

reasonable from the evidence and amply supporting a violation Section 11(c).

>    *2.  back pay*

Section 11(c)(2) grants district courts the jurisdiction to award "all appropriate

relief" to an employee who has been discharged in violation of the OSH Act's anti-

retaliation provision.  29 U.S.C. § 660(c)(2).  Cases under Section 11(c) have awarded

back pay, reinstatement, compensatory damages, and punitive damages.

---

[10]  Defendants also argue that it would have fired Mr. Shack had it known he was selling equipment from his personal business, Picture Perfect, to the School at a profit.  This after-discovered evidence is a damages issue, not a liability one.  Further, the jury found that Defendants would not have terminated Mr. Shack for this conduct.  Based on the evidence, I agree.

Defendants, pointing *Holland v. Gee*, 677 F.3d 1047 (11th Cir. 2012), argue back pay is inappropriate because the School eliminated Mr. Shack's teacher's aide position from the School's budget and used the funding to hire a faculty member, a position for which Mr. Shack was not qualified. *Holland* is a pregnancy discrimination case brought under Title VII and the Florida Civil Rights Act. *Id*. The Eleventh Circuit in that case noted that "[i]n a case where the plaintiff employee's position is eliminated immediately after her termination, back pay might be reduced if the employer can 'establish by a preponderance of the evidence that [the] plaintiff would not have been retained in some other capacity.'" *Holland*, 677 F.3d at 1066 n. 9 (*quoting Archambault v. United Computing Sys., Inc.*, 786 F.2d 1507, 1515 (11th Cir. 1986)). The *Holland* court, however, did not decide this issue because the employer brought it up for the first time at oral argument and therefore had abandoned it. *Holland*, 677 F.3d at 1066-67. In *Archambault*, the Eleventh Circuit upheld the district court's determination that an aggrieved employee's back pay award should be cut off on the date his former company eliminated his position for a legitimate, non-discriminatory reason. 786 F.2d at 1515. In that case, the employer had undergone a complete corporate reorganization after discharging the plaintiff-employee, which led to the elimination of the plaintiff's previous position. *Id*.

Here, Defendants unlawfully terminated Mr. Shack's employment. It is this unlawful act that they now claim limits Mr. Shack's back pay award, because they did not re-hire to fill his position and re-structured their budget and hired a faculty member

instead.  *See* Joint Ex. 6.  Mr. Shack was not qualified for the new faculty position.  But

this is not the type of corporate re-structuring contemplated in *Archambault*.  What is

more, Defendant did not offer any credible evidence that it would not otherwise have

employed Mr. Shack at the time of trial.  In fact, Defendants "failed to introduce any

evidence demonstrating either that Mr. Shack was unqualified for another available

position or that, for some other reason, reassignment would have been infeasible."

*Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1350-51 (11th Cir. 2000) (discussing

*Archambault* in context of front pay under the ADEA and finding that employer did not

meet its burden by merely showing it eliminated the plaintiff-employee's former

position).  Thus, Defendants' argument fails.

   The jury awarded $55,000 in back pay as compensation for Defendants'

retaliatory discharge.  The Secretary presented evidence that Mr. Shack made $15 per

hour as a teacher's aide and $22.50 per hour for all work performed in excess of 80 hours

per pay period.  Plf. Ex. 9.  From April 2008 until March 2009, Mr. Shack made

$32,865.04 in gross wages for work performed at the School, which averages to

$2,738.75 in gross pay per month between hourly and overtime pay.  Def. Ex. 5.  This

approximates what Mr. Shack's gross monthly income would have been between August

2009 (when his termination took effect) and the present (50 months), had Defendants not

terminated him.  This totals $136,938 in gross back wages.  The parties presented

evidence that Mr. Shack mitigated these damages with freelance jobs, earning

10

approximately $59,255 between 2009 and 2013.[11]  Plf. Ex. 31-B, 31-B-1.  Based on these

figures, Mr. Shack's lost wages approximate $77,683 ($136,938 in gross lost wages,

minus $59,255 in wages Mr. Shack earned through mitigating his damages).  Thus, I find

the jury's award of $55,000 in back pay reasonable and adopt their calculation.

     *3.  laches*

Defendants ask the Court to apply the doctrine of laches and reduce the jury's

award of $55,000 in back pay.  The Secretary responds that, as an government agency, it

is not subject to the defense of laches.  Both parties agree that the laches issue is an

equitable one for the Court to decide, not the jury.  *See Finnerty v. Wireless Retail, Inc.*,

624 F. Supp. 2d 642, 665 (E.D. Mich. 2009) ("a laches defense is within the sound

discretion of the trial court," and not the province of the jury).

Laches is an equitable doctrine "designed to prevent unfairness to a defendant due

to a plaintiff's delay in filing suit in the absence of an appropriate statute of limitations."

*EEOC v. Dresser Indus., Inc.*, 668 F.2d 1199, 1201 (11th Cir. 1982).  The OSH Act does

not contain a limitations period for actions brought under Section 11(c).  In the absence of

federally-prescribed limitations periods, "the courts have frequently inferred that

Congress intended to 'borrow' the most analogous state statutes of limitations." *Donovan*

*v. Square D Co.*, 709 F.2d 335, 337 (5th Cir. 1983).  This inference, however, is not

---

    [11]  Mr. Shack testified that he would have been able to complete some freelance jobs
even if employed at the School.  The figure of $59,255 is the total wages Mr. Shack earned
at freelance jobs from 2009 through 2013 that, according to Mr. Shack, he would not have
performed if he had been working at the School.

drawn in every case: "It is well settled that the United States is not bound by state statutes

of limitations or subject to the defense of laches in enforcing its rights." *United States v.*

*Summerlin*, 310 U.S. 414, 416 (1940); *Herman v. S. Carolina Nat'l Bank*, 140 F.3d 1413,

1427 (11th Cir. 1998).

This case is brought by the Secretary to enforce the private rights of Mr. Shack as

well as the public workplace safety rights advanced by the OSH Act.  In such hybrid

cases, the doctrine of laches may be applied to limit relief.  *See Occidental Life Ins. Co. v.*

*EEOC*, 432 U.S. 355, 373 (1977); *Marshall v. Intermountain Elec. Co.*, 614 F.2d 260,

262 (10th Cir. 1980).  The Eleventh Circuit has not decided whether laches applies to

anti-retaliation cases brought under the OSH Act, but it has applied laches to bar an

EEOC suit in a Title VII case.  *See Dresser Indus.*, 668 F.2d at 1201-02.  Courts outside

of the Eleventh Circuit have held that laches may apply in cases brought under the OSH

Act to limit relief.  *See Intermountain*, 614 F.2d at 262-63 ("[T]he policy underlying the

refusal to apply state limitations statutes is even more compelling in a Section 11(c) suit

than in a Title VII action because, unlike Section 11(c), Title VII authorizes a private suit

in the name of the aggrieved employee in addition to, or in lieu of, an action by the

federal agency"); *Square D Co.*, 709 F.2d at 337 (Section 11(c) suits not barred by state

limitations periods; in certain cases "in which an inordinate and inexcusable delay results

in prejudice" to a defendant, the court may restrict or deny back pay); *Diplomat Envelope*

*Corp.*, 587 F. Supp. at 1423 (denying defendant's summary judgment argument regarding

laches in Section 11(c) case, not because the doctrine did not apply, but because

12

defendant could not prove the elements of the defense).

Based on these cases and the close resemblance of Title VII cases to OSHA proceedings, I find that laches is available as a defense in this case.  Determining whether it applies to restrict back pay, however, is a separate issue.  Defendants have the burden of demonstrating two elements:  "[T]he court must find both that the plaintiff delayed inexcusably in bringing the suit and that this delay unduly prejudiced defendants." *Dresser Indus.*, 668 F.2d at 1202 (citation and quotation omitted); *EEOC v. Riverview Animal Clinic, P.C.*, 761 F. Supp. 2d 1296, 1304 (N.D. Ala. 2010) (same in context of Title VII case and finding that such a determination is a matter for the court, not the jury).

Here, Defendants argue that over two and one-half years passed from the date OSHA received Mr. Shack's complaint to the date the Secretary filed suit.  Specifically, according to Defendants, laches applies because Mr. Shack submitted his complaint in the summer of 2009, an OSHA investigator did not conduct witness interviews until June and July 2010, OSHA waited another nine months before issuing a subpoena for documents, and then another year after that to file suit.  The School contends first that it made numerous staff changes in the meantime, which made it difficult to locate and depose witnesses, and second that witness testimony was so far removed from the date of Mr. Shack's termination that it was of questionable credibility.  Third, Defendants allege that the amount of back pay has been mounting since Mr. Shack's termination and would have been much less had the Secretary sued promptly.

Defendants have not demonstrated excessive delay on the Secretary's part.  This

13

case was filed in March 2012, approximately 30 months after Mr. Shack filed his online

complaint with OSHA.  Nonetheless, Defendants were on notice of Mr. Shack's

complaints of retaliatory discharge at least by April 2010, when their counsel sent a

position paper to the OSHA investigator then assigned to the case.  *See* Plf. Ex. 6.  This is

less than a year from the date of Mr. Shack's July 2009 online complaint.  *See* Plf. Ex. 11.

What is more, Anthony Rosa, an OSHA investigator, testified that Defendants waited six

months before producing documents in response to the agency's subpoena.  OSHA's

administrative investigation could not conclude until it received these documents.  The

agency's investigation was closed in October 2011, when it sent the case to the Solicitor

General's office to be litigated.  *Compare EEOC v. Jacksonville Shipyards, Inc.*, 690 F.

Supp. 995, 999-1000 (M.D. Fla. 1988) (EEOC's failure to file suit after six years did not

constitute undue delay because EEOC had promptly notified the defendant when the

charge was filed, had remained in communication with the defendant, and filed suit about

a year after settlement talks failed); *and Diplomat Envelope Corp.*, 587 F. Supp. at 1423

(denying defendants' laches argument on summary judgment; OSHA filed suit under

11(c) approximately 14 months after putting defendants on notice); *with Dresser Indus.*,

668 F.2d at 1202-03 (finding laches applied in case brought by EEOC where over two

and one-half years elapsed between employee's filing of charge with the agency and

employer's receipt of a copy of the charge).

Mr. Rosa also explained that in 2009 and 2010, there was a substantial

administrative backlog of whistle blower investigations.  The case ended up being

14

assigned to an out of town investigator due to workload of the Tampa investigator. This caused some amount of delay. Mr. Rosa also detailed the agency's investigative process: OSHA interviews the complainant (which occurred in September 2009), then waits for a position statement from the employer (which Defendants sent in April 2010), and then OSHA proceeds with the investigation.

Further, the agency took time to research the issue of the OSH Act's applicability to the School. The answer to this question was not an obvious one and, in fact, was the topic of this Court's summary judgment order. Under these circumstances, this is not undue delay: "[I]n recognition of both the need for agency flexibility and the reality of administrative backlog, Congress elected to forego placing an inflexible timetable upon the Secretary for bringing suit." *Square D. Co.*, 709 F.2d at 339. This is especially so in light of Section 11(c)(2), which grants district courts the jurisdiction to order "all appropriate relief" in each anti-retaliation case. To apply laches in this case to restrict or deny back pay would not be a "just result." *See Occidental Life Ins. Co.*, 432 U.S. at 373.

Defendants also have not met their burden of demonstrating undue prejudice. Although Ms. Maloney and Mr. Sands, two witnesses in the case, were no longer employed at the School (and Ms. Maloney, in fact, has moved to England), they were located, deposed, and their testimony was presented at trial. And Defendants were on notice as early as April 2010 of Mr. Shack's whistle blower complaint; document preservation should have started then. Further, I find no merit in Defendants' argument that the amount of back pay has increased due to the Secretary's timing. "The mounting

15

of penalties during periods of noncompliance is a response to unlawful conduct, not a form of 'prejudice' that permits the wrongdoer to get away scot free." *Reich v. Sea Sprite Boat Co., Inc.,* 50 F.3d 413, 418 (7th Cir. 1995).[12]

### 4. *punitive damages*

The jury also awarded $120,000 in punitive damages divided as follows: $100,000 against Dr. Jones and $20,000 against the School.  If Defendants wish to argue the appropriateness of the punitive damages award, they are directed to bring it to the Court's attention through a post-judgment motion.  *See* Fed. R. Civ. P. 50(b); Fed. R. Civ. P. 59(e).

### 5. *reinstatement*

The Secretary after the jury's verdict urged reinstatement.  Admittedly, "all appropriate relief" under Section 11(c) may include "reinstatement of the employee to his former position with back pay."  29 U.S.C. § 11(c)(2).  Reinstatement, however, is not a proper remedy when there are extenuating circumstances, such as a high level of discord between the parties.  *See Weatherly v. Ala. State Uni.*, No. 12-13414, 2013 WL 4712727, at *7 (11th Cir. Sept. 3, 2013) (parties agreed that reinstatement was inappropriate remedy in Title VII case due to level of discord); *see also Reich v. Cambridgeport Air Sys., Inc.*, 26 F.3d 1187, 1191-94 (1st Cir. 1994) (the language of Section 11(c) is "broad"

---

[12] I note that before the parties consented to my jurisdiction, the Defendants asserted a laches argument in their Rule 12(b)(6) motion to dismiss the complaint.  The district judge denied the motion (doc. 10).

and includes the remedy of reinstatement but does not limit the court to this remedy only). The parties seemed to tacitly acknowledge this discord.  In any event, I find that reinstatement is not "appropriate relief" under the circumstances presently existing at the School. 29 U.S.C. § 660(c)(2).

> C. Conclusion

The jury found that Defendants terminated Mr. Shack's employment in violation of Section 11(c) and that the Secretary had proven by a preponderance of the evidence that $55,000 in back pay was due and owing by the Defendants.  For the reasons previously outlined, I adopt the jury's advisory verdict.  Accordingly, the Clerk is directed to:

(1)     enter judgment for Secretary and against Defendants for $55,000 in back pay damages;

(2)     enter judgment for the Secretary and against Defendant Dr. Charles Jones for $100,000 in punitive damages;

(3)     enter judgment for the Secretary and against Defendant The Manatee School for the Arts for $20,000 in punitive damages.

DONE and ORDERED in Tampa, Florida on September 30, 2013.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE